IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 26, 2007 Session

**CHARLES RAINES, as Administrator of the
Estate of ZELMA RAINES, deceased,
v.
NATIONAL HEALTH CORPORATION
d/b/a NHC HEALTHCARE, MURFREESBORO;
NATIONAL HEALTHCORP, L.P.;
NATIONAL HEALTH REALTY, INC.;
NATIONAL HEALTHCARE CORPORATION;
NHC, INC. a/k/a NHC, INC. - TENNESSEE;
and NHC/OP, L.P.**

**Appeal from the Circuit Court for Rutherford County at Murfreesboro, Tennessee
No. 50952     Robert E. Corlew, III, Judge**

---

**No. M2006-1280-COA-R3-CV - Filed December 6, 2007**

---

This case was filed as a nursing home neglect case. The issue before the Court relates to the enforceability of an arbitration agreement signed during the nursing home admissions process by the holder of a durable power of attorney. The trial court denied the appellants' motion to compel arbitration. It held that the arbitration agreement was beyond the authority of the attorney-in-fact, and, therefore, it did not reach questions related to the capacity of the decedent to execute the durable power of attorney; nor did it address the unconscionability of the agreement. We reverse the trial court as to its ruling on the authority of the attorney-in-fact and remand for a hearing and decision on the other issues not previously reached below.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded.**

WALTER C. KURTZ, SP. J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J.,W.S., and DAVID R. FARMER, J., joined.

John B. Curtis, Jr. and Bruce D. Gill, Chattanooga, Tennessee, for the appellants, National Health

1

Corporation d/b/a NHC Healthcare, Murfreesboro; National Healthcorp, L.P.; National Realty, Inc.; National Healthcare Corporation; NHC, Inc. a/k/a NHC, Inc. - Tennessee; and NHC/OP, L.P.

Richard E. Circeo and Deborah Truby Riordan, Nashville, Tennessee, for the appellee, Charles Raines, as Administrator of the Estate of Zelma Raines, deceased.

**OPINION**

**I. BACKGROUND**

In this case it is alleged that inadequate and improper care caused the death of the decedent, Ms. Zelma Raines, while she was in the care of a nursing home. Ms. Raines, who suffered from Alzheimer's disease, was admitted to NHC Healthcare, Murfreesboro ("NHC") on December 12, 2000.[1] She died on December 20, 2003.

Carla Perakes, Ms. Raines' granddaughter, possessed a durable power of attorney to make health care decisions for her grandmother. This power of attorney was executed at another nursing home at which Ms. Raines had been a resident prior to her move to NHC. In connection with Ms. Raines' admission to NHC, Ms. Perakes, acting as Ms. Raines' attorney-in-fact, executed an eleven-page admission agreement, which set forth numerous items, including information on services provided, rates charged, payment arrangements, and Medicare and Medicaid coverage. On pages nine and ten of the agreement, NHC set forth its "Dispute Resolution Procedure," which included mandatory arbitration of any claims and a waiver of any right to a jury trial.

On November 3, 2004, Charlie Raines, in his capacity as administrator of the estate of Zelma Raines, filed suit against NHC and other related entitles for the alleged negligent custodial care and treatment of Ms. Raines. The defendants answered the complaint and raised as an affirmative defense the existence of the arbitration provision at issue here. The defendants also filed a motion to compel arbitration and stay proceedings. In the trial court the plaintiff challenged the enforceability of the agreement. Specifically, the plaintiff contended the following:

(1) The arbitration agreement was beyond the powers granted to the attorney-in-fact;
(2) Ms. Raines was mentally incapable of executing the power of attorney; and
(3) The agreement was unconscionable and therefore unenforceable.

Following discovery a hearing was held on April 25, 2006. On May 11, 2006, the trial court denied the defendants' motion. This was reflected in a letter to counsel. The trial court ruled directly on the first of these issues, commented equivocally on the second, and pretermitted the third.

The letter written by the trial court states:

---

[1] The Court will refer to all of the multiple National Healthcare defendants as "NHC."

Thank you for your presentations. Before us is a Motion for Summary Judgment[2] filed by the Defendant, N.H.C., seeking to enforce provisions of a contract which requires arbitration. We understand the facts to show that there is some question as to the competence of the Plaintiff at the time the Plaintiff signed the Durable Power of Attorney for Healthcare under authority of which the agreement was signed with [N.H.C.] providing for arbitration. For that reason alone, we must find that a Summary Judgment is not proper. We are all aware of the standard required of the Court in dealing with [a] Motion for Summary Judgment and of the teachings of the overused *Byrd v. Hall* case, and we find no need to repeat those issues in a short trial court opinion.

Further, you have cited to us our prior opinion in *King v. [N.H.C.]*, which as we understand, is now on appeal.[3] In that opinion, we dealt with the question of enforceability of a similar provision in a Durable Power of Attorney, and we found, in that case, that the arbitration provisions should not be enforced. At this point, we, of course, would rule consistently with our prior opinion, but we again would note that we should yield to the teachings established by the Court of Appeals should their rulings differ in any respect with the decisions we made previously, to the extent this case and *King* are factually similar.

At this point, then, it appears proper to deny the Motion for Summary Judgment. We look forward to the opportunity to work with you further in this case. Mr. Circeo will kindly prepare the order. This short memorandum opinion-letter will become a part of the file in this case. Costs and further matters are reserved.

The Order of June 2, 2006 reflecting the trial court's decision states:

This matter came before the Court on Defendants' Motion to Compel Arbitration and Stay Proceedings. After considering the Motion, Plaintiff's Response, arguments of

---

[2] It is unclear why the trial court referred to the motion as one for summary judgment. The motion before it was clearly titled "Motion to Compel Arbitration and Stay Proceedings."

[3] This makes reference to the case of *Owens v. National Health Corp.*, 2006 WL 1865009 (Tenn. Ct. App. June 30, 2006) in which the very same trial court was reversed by the Court of Appeals subsequent to the proceedings in this case. The Supreme Court granted review, and the case was argued on June 6, 2007. The decision of the Court of Appeals was affirmed. *Owens v. Nat'l Health Corp.*, ___ S.W.3d ___, 2007 WL 3284669 (Tenn. Nov. 8, 2007). The Supreme Court's opinion in *Owens* will be discussed *infra*. Following the November 8, 2007 decision by the Supreme Court in *Owens* the parties to this case utilized T.R.A.P. 27(d) to make additional filings which provide this Court their interpretations of the Supreme Court's *Owens* decision. These additional filings have been considered.

3

counsel, and the record as a whole, the Court hereby finds that the Motion is not well taken and should be denied. As grounds for its denial, the Court hereby incorporates by reference its letter of May 11, 2006 to respective counsel regarding its decision on this matter.

It is therefore ORDERED that Defendants' Motion to Compel Arbitration and Stay Proceedings is DENIED.

## II. ERRORS ALLEGED

The defendants appeal the denial of their motion and raise the following issues:
(1) Whether the trial court erred in applying a summary judgment standard in denying the defendants' motion to compel arbitration and stay proceedings?

(2) Whether the trial court erred in failing to find that the plaintiff/appellee had not satisfied her burden of proof to invalidate an otherwise operable durable power of attorney granting the attorney-in-fact authority to execute the arbitration agreement?

## III. PROCEDURE WHEN A TRIAL COURT IS PRESENTED WITH AN ISSUE OF WHETHER A CONTRACT REQUIRES ARBITRATION

As indicated above, the trial court in this case utilized a summary judgment standard in denying the defendants' motion to compel arbitration. We agree that use of this standard was erroneous.

"Arbitration is a consensual proceeding in which the parties select decision-makers of their own choice and then voluntarily submit their disagreement to those decision-makers for resolution in lieu of adjudicating the dispute in court." *Merrimack Mut. Fire Ins. Co. v. Batts*, 59 S.W.3d 142, 149 (Tenn. Ct. App. 2001). "[A]rbitration agreements generally are enforceable unless grounds for their revocation exist in equity or in contract law." *Buraczynski v. Eyring*, 919 S.W.2d 314, 318 (Tenn. 1996) (citing T.C.A. § 29-5-302(a) (Supp.1995)); *see* 9 U.S.C. § 1 *et seq.* (Federal Arbitration Act). "Therefore, the scope of an arbitrator's authority is determined by the terms of the agreement between the parties which includes the agreement of the parties to arbitrate the dispute." *D&E Const. Co., Inc. v. Robert J. Denley Co., Inc.*, 38 S.W.3d 513, 518 (Tenn. 2001) (internal quotation marks omitted). "When the parties agree to arbitrate, they are bound by the terms of that arbitration provision." *Id.* But, "[b]ecause '[a]rbitration is a matter of contract[,] . . . a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Rosenberg v. BlueCross BlueShield of Tennessee, Inc.*, 219 S.W.3d 892, 903 (Tenn. Ct. App. 2006) (quoting *AT&T Techs., Inc. v. Communications Workers of Am.*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)).

Accordingly, when a party moves to compel arbitration, the trial court's consideration of the motion "addresses itself primarily to the application of contract law." *Id.* (citation omitted). Likewise, "[c]ourts should generally apply 'ordinary state-law principles' in deciding whether the parties agreed to submit certain issues to arbitration." *Frizzell Const. Co., Inc. v. Gatlinburg, LLC*,

4

9 S.W.3d 79, 85 (Tenn. 1999) (citation omitted); *see also Taylor v. Butler*, 142 S.W.3d 277, 284 (Tenn. 2004); *T.R. Mills Contractors, Inc. v. WRH Enters., LLC*, 93 S.W.3d 861, 866-70 (Tenn. Ct. App. 2002). "Under Tennessee law . . . the cardinal rule [in interpreting contracts] . . . is to ascertain the intention of the parties and to give effect to that intention, consistent with legal principles." *Frizzel Const.*, 9 S.W.3d at 85 (internal quotation marks omitted).

It is recognized that, in a contest over an arbitration agreement, a court has to decide "certain gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy." *Green Tree Fin. Corp. v. Bazzle*, 539 U.S. 444, 452, 123 S.Ct. 2402, 156 L.Ed.2d 414 (2003) (citations omitted). "Generally, whether a valid agreement to arbitrate exists between the parties is to be determined by the courts, and if a complaint specifically challenges the arbitration clause on grounds such as fraud or unconscionability, the court is permitted to determine it[s] validity before submitting the remainder of the dispute to arbitration." *Taylor*, 142 S.W.3d at 283-84 (citations omitted).

The Tennessee Uniform Arbitration Act, T.C.A. § 29-5-301 *et seq.*, speaks to situations in which there is a disagreement between the parties over enforcement of an alleged agreement to arbitrate. When the party seeking arbitration produces a written agreement to arbitrate as described in T.C.A. § 29-5-302 and another party "denies the existence of the agreement to arbitrate, the Court shall proceed summarily to the determination of the issue so raised and shall order arbitration if found for the moving party; otherwise, the application shall be denied." T.C.A. § 29-5-303 (a). If arbitration is ordered, then the court action "shall be stayed." T.C.A. § 29-5-303(d). Although it employs different language, the Federal Arbitration Act also prescribes a process for addressing such preliminary contests over a proffered agreement to arbitrate. *See* 9 U.S.C. §§ 3-4; *see, e.g., U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co., Ltd.*, 16 F.Supp.2d 326, 337-38 (S.D.N.Y. 1998).

When resolving these "gateway" issues, a court is frequently called upon to consider matters outside of the pleadings, but this does not convert the motion to compel arbitration into a motion for summary judgment under Tennessee Rule of Civil Procedure 56. This Court has previously rejected a plaintiff's contention in a challenge to arbitration that the trial court's consideration of matters outside the pleadings meant that the motion was transformed into a motion for summary judgment. *Thompson v. Terminix Int'l Co., LP*, 2006 WL 2380598, at *4 (Tenn. Ct. App. Aug. 16, 2006). Indeed, a proper motion to compel arbitration is not even a true motion to dismiss. *See id.* at *3. "The correct procedure to be followed by the trial court upon a motion to compel arbitration, therefore, is, if it determines the matter is subject to arbitration, to enter an order compelling arbitration of that matter and staying the matter." *Id.* As such, in that case, this Court reversed the trial court's dismissal of the action and remanded for entry of an order staying the proceedings pending arbitration. *Id.* at *6.

In considering opposition to a motion to compel arbitration, a court must distinguish between those arguments attacking the agreement which can be resolved solely as a matter of law and those arguments which require resolution of factual issues. While the former category mirrors a case in which a court is called upon to interpret contractual language and apply it to uncontested facts, the latter requires the trial court to receive evidence and resolve the relevant disagreements before deciding the motion. *See* T.C.A. § 29-5-303. Although it appears that neither this Court nor our

Supreme Court has had occasion to make this principle explicit, prior decisions have nonetheless illustrated the necessity of an evidentiary hearing when facts related to an arbitration agreement are disputed. *See, e.g., Howell v. NHC Healthcare-Fort Sanders, Inc.*, 109 S.W.3d 731, 732-35 (Tenn. Ct. App. 2003) (discussing trial court's evidentiary hearing and findings); *see also Raiteri v. NHC Heathcare/Knoxville, Inc.,* 2003 WL 23094413, at *4 (Tenn. Ct. App. Dec. 30, 2003); *cf. Guffy v. Toll Bros. Real Estate, Inc.,* 2004 WL 2412627, at *6-7 (Tenn. Ct. App. Oct. 27, 2004) (remanding case to trial court for determination of additional facts).

A case from California contains an instructive description of the principles involved in such proceedings as well as the shifting burden of proof. There the appellate court was similarly faced with a trial court's decision on enforcement of an arbitration agreement which had been based on a faulty reference to the standard for summary judgment. The court explained that the law requires a trial court to act promptly in making a determination as to whether the agreement in question is enforceable.

> The petitioner bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence, and a party opposing the petition bears the burden of proving by a preponderance of the evidence any fact necessary to its defense. In these summary proceedings, the trial court sits as a trier of fact, weighing all the affidavits, declarations, and other documentary evidence, as well as oral testimony received at the court's discretion, to reach a final determination. No jury trial is available for a petition to compel arbitration.

> Although the record is not entirely clear on this point, it appears that the trial court in this case, as in *Rosenthal* [4] incorrectly treated [the] petition to compel arbitration as a type of summary judgment motion, in which it was obliged to determine only that there was a legitimate factual dispute among the parties and not to resolve that dispute. The court stated at the conclusion of its ruling on the petition to compel: "In summary, the Plaintiffs have made a substantive challenge to the arbitration clause and have presented facts tending to show that they were victims of fraud in the inducement and application of the arbitration clause. How a trier of fact will ultimately decide the issues is not for this court to decide. However, given the seriousness of the allegations, the showing of a factual basis for those claims, and the finality of arbitration even in the face of apparent legal error [citation], the strong policy favoring arbitration is outweighed by the law and facts in support of Plaintiffs' position." To judge from remarks made by the trial court during the hearing on the petition to compel, the court appears to have followed the reasoning of *Rowland v. Paine Webber Inc.*, (1992) 4 Cal. App. 4th 279, 285-286 [6 Cal. Rptr. 2d 20], that a court must only determine whether "there are any facts supporting the allegations of fraudulent inducement." Toward the end of the hearing on the petition to compel, the trial court again alluded to cases "that have . . . talked in terms of the burden being akin to a burden on a summary judgment motion." Moreover, both counsel . . .

---

[4] This refers to *Rosenthal v. Great Western Fin. Secs. Corp.*, 926 P.2d 1061 (Calif. 1996).

appear to have conceived their burden as one similar to summary judgment. The trial court was apparently of the view that it did not have to definitively decide the fraud issue in order to dispose of the petition, because that issue would be ultimately decided by a jury in the context of the [the plaintiffs'] damages action. Because the trial court, understandably confused by case law, apparently abdicated its role as trier of fact in deciding the petition to compel arbitration, the case must be remanded to that court to resolve any factually disputed issues, unless there is no evidentiary support for the [the plaintiffs'] claims.

*Engallas v. Permanent Med. Group, Inc.*, 938 P.2d 903, 915-16 (Calif. 1997) (internal citations omitted).

The position of the California Supreme Court is consistent with the general rule followed in other jurisdictions. For example, Florida's Fourth District Court of Appeal has made it clear there that, while no evidentiary hearing is necessary when the evidence is uncontested, such a hearing is required when the evidence as to the validity of an arbitration agreement is in dispute. *Houchins v. King Motor Co. of Fort Lauderdale, Inc.*, 906 So.2d 325, 329 (Fla. Dist. Ct. App. 2005) (citing several Florida cases); *see also, e.g., J.A. Walker Co., Inc., v. Cambria Corp.*, 159 P.3d 126, 130 (Colo. 2007); *Bass v. SMG, Inc.*, 765 N.E.2d 1079, 1084 (Ill. App. Ct. 2002); *Federal Signal Corp. v. SLC Techs., Inc.*, 743 N.E.2d 1066, 1070 (Ill. App. Ct. 2001); *Stenzel v. Dell, Inc.*, 870 A.2d 133, 139 (Me. 2005); *NETCO, Inc. v. Dunn*, 194 S.W.3d 353, 362 (Mo. 2006); *Kiell v. Kiell*, 633 S.E.2d 827, 829-30 (N.C. Ct. App. 2006); *Yessenow v. Aue Design Studio, Inc.*, 848 N.E.2d 563, 566 (Ohio Ct. App. 2006); *Shaffer v. Jeffery*, 915 P.2d 910, 917-18 (Okla. 1996). Federal courts likewise engage in an evidentiary hearing "[w]here there is a genuine issue as to a fact material" to determining whether there is a valid agreement to arbitrate. *See, e.g., Prudential Secs., Inc. v. Arain*, 930 F.Supp.151, 154 (S.D.N.Y. 1996).

The trial court's role, then, is not just to determine if there is an issue regarding enforceability. It must also determine if the agreement is in fact enforceable. Even if the party challenging the arbitration agreement interposes such defenses as fraud in the inducement, unconscionability, or lack of authority, it is up to the trial court to resolve such issues and make a clear ruling as to whether or not the agreement is enforceable. Therefore, the trial court must proceed expeditiously to an evidentiary hearing when it faces disputed issues of fact that are material to a party's motion to compel arbitration; it may not decline to resolve the question until trial of the underlying case. Where material facts are not contested, however, no such evidentiary hearing is required.

The scope of appellate review over the trial court's decision will in turn vary depending upon the nature of the action taken below. "As a general rule, a court's enforcement of an arbitration provision is reviewed *de novo*." *Rosenberg*, 219 S.W.3d at 903 (citing *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 497 (6th Cir. 2004)). While "[w]ith respect to the trial court's legal conclusions . . . there is no presumption of correctness" it is also the case that "[t]here is a presumption of correctness as to the trial court's findings of fact, unless the preponderance of the evidence is otherwise." *T.R. Mills Contractors*, 93 S.W.3d at 864 (citations omitted); *see also Rosenberg*, 219 S.W.3d at 903-04.

## IV. POWER OF ATTORNEY-IN-FACT TO ENTER INTO ARBITRATION AGREEMENT

At the time the trial court ruled in this case it was unclear whether a person with a power of attorney could enter into an arbitration agreement with a healthcare facility and thereby waive the principal's right to a trial by jury. This issue has now been decided. A power of attorney covering health care decisions does authorize the attorney-in-fact to enter into an arbitration agreement on behalf of the principal as part of a contract admitting the principal to a nursing home, and it thereby also authorizes the attorney-in-fact to waive the principal's right to a jury trial. *Owens v. Nat'l Health Corp.*, ___ S.W.3d ___, 2007 WL 3284669 (Tenn. Nov. 8, 2007). Thus, the trial court erred when it ruled that the attorney-in-fact in this case could not have possessed authority under the power of attorney to enter into the arbitration agreement with NHC.

## V. ISSUES NOT DECIDED BY TRIAL COURT

Because the trial court ruled that the power of attorney could not have authorized the attorney-in-fact to enter into the arbitration agreement, it did not decide the two other issues which were before it:

(1) Whether Ms. Raines was mentally incapable of executing the power of attorney; and
(2) Whether the agreement was unconscionable and therefore unenforceable.

The defendants ask us to decide these issues without remand. They argue that the record is such that the Court can find that Ms. Raines had the mental capacity to enter into a binding power of attorney; they also argue that this Court can find that the arbitration agreement was not unconscionable. The Court disagrees. Often when a trial court's decision rests upon an improper legal standard and omits necessary factual and legal analysis, it is appropriate to remand the case to the trial court for reconsideration. *See, e.g., Dandridge v. Williams*, 397 U.S. 472, 475 n. 6, 90 S.Ct. 1153 (1970) (citation omitted); *Reynolds v. Giuliani*, ___ F.3d ___, 2007 WL 3171314, at *13 (2d Cir. Oct. 31, 2007); *First Tennessee Bank v. Hurdlock*, 816 S.W.2d 38, 40 (Tenn. Ct. App. 1991) (remand within judicial discretion when issues have been left undecided by the trial court).[5]

The *Owens* court faced the same situation. Having found the arbitration agreement to be within the power of the attorney-in-fact, the Supreme Court was urged by the nursing facility to decide the unconscionability issue without remand. The Supreme Court stated that it was unable to resolve the question of whether the arbitration agreement was unconscionable on the limited record before it and, thus, it remanded the case to the trial court for further proceedings on that issue.

---

[5] It is perhaps worth noting that the defendants concede in their reply brief that this appeal was focused on the trial court's use of an impermissible standard: "Defendants' appeal from the trial court's denial of their motion to compel arbitration was largely premised upon the improper conversion of the same to a motion for summary judgment."

*Owens,* ___ S.W.3d at ___, 2007 WL 3284669, at *11-12.[6]

The capacity issue should also be subject to the same fate. In *Tennessee Farmers Life Reassurance Co. v. Rose*, ___ S.W.3d ___, 2007 WL 2826918 (Tenn. Oct. 2, 2007), the Supreme Court reversed a trial court's decision regarding the legal authority of an attorney-in-fact under a power of attorney to change the beneficiary of a life insurance policy. Because the trial court had ruled that the attorney-in-fact was without the legal authority to change the beneficiary, it never reached the issue of whether the insured "had the capacity to execute said durable general power of attorney given her physical and mental condition." *Id.* at *6. The Supreme Court reversed but also remanded so that the trial court could determine if the other asserted defenses had validity.

As mentioned, one of the issues here was whether the insured possessed the capacity to execute the durable general power of attorney. The trial court in this case commented that "there is some question as to the competency" of Ms. Raines at the time she signed the power of attorney. It, however, never resolved this issue since it proceeded to apply an erroneous legal standard in considering the motion before it. This Court has previously addressed the question of competency to execute a power of attorney. *See In re Conservatorship of Davenport v. Adair*, 2005 WL 3533299, at *17-19 (Tenn. Ct. App. Dec. 27, 2005). The court below should have applied the law as set out in *Davenport* to the facts of this case and ruled on the question of whether or not Ms. Raines was competent when she executed the power of attorney.

Accordingly, this Court is of the opinion that this matter should be remanded to the trial court for it to consider these two remaining defenses and for it to also make findings of fact and conclusions of law as to whether the arbitration agreement is enforceable. The Court notes that another panel of this Court has reached a similar result in another post-*Owens* case. *See Cabany v. Mayfield Rehabilitation and Special Care Ctr.*, 2007 WL 3445550 (Tenn. Ct. App. Nov. 15, 2007). In *Cabany*, pursuant to *Owens*, the trial court was reversed on its ruling that the nursing home arbitration agreement was beyond the authority of the attorney-in-fact, but the case was then remanded to the trial court for consideration of two other unresolved disputes related to enforceability of the arbitration agreement. *Id.* at 7.

## VI. CONCLUSION

The trial court's decision is reversed on the issue of whether the arbitration agreement was beyond the authority of the attorney-in-fact. *See Owens*, ___ S.W.3d ___, 2007 WL 3284669 (Tenn. Nov. 8, 2007). This case is remanded, however, for the trial court to determine the validity of the

---

[6] Although not encompassed within the defined assignments of error on appeal, the parties have briefed the sub-issue of whether or not the fact that the arbitration organization designated in the agreement no longer performs these arbitrations would void the agreement to arbitrate. This issue was also addressed in *Owens*, ___ S.W.3d at ___, 2007 WL 3284669, at *7-8, and it was resolved adverse to the assertion of the plaintiff here. When an agreed upon arbitrator is unavailable, the trial court may appoint one or more arbitrators to conduct the arbitration. *Id.*

two other asserted defenses and for it to otherwise rule on the enforceability of the arbitration agreement.

_____
WALTER C. KURTZ, SPECIAL  JUDGE